## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HERNAND RAMIREZ,                        *
                                        *
            Plaintiff,                  *
                                        *
      v.                                *        Civil Case No. SAG-19-03252
                                        *
316 CHARLES, LLC et al.,                *
                                        *
            Defendants.                 *

****** 

## MEMORANDUM OF DECISION

Homeslyce is a pizza restaurant with multiple locations in the greater Baltimore, Maryland, and Washington, D.C., area.  Plaintiff, Hernand Ramirez ("Ramirez"), claims he worked at Homeslyce in Baltimore and Columbia, Maryland, and was not paid overtime wages as required by the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL").  Ramirez named 316 Charles, LLC ("316 Charles"); 9400 Snowden River, LLC ("Snowden River"); and Haluk Kantar ("Kantar") (collectively "Defendants") as his defendant employers.  This Court held a bench trial on November 5 and 6, 2020.

The Court has heard the evidence and reviewed the exhibits.  For the following reasons, the Court finds Kantar and Snowden River jointly owe Ramirez $18,806.44, plus reasonable attorneys' fees and costs.

### I.      Findings of Fact

The Court finds the facts stated herein based upon its evaluation of the evidence, including the credibility of the witnesses, and the inferences that the Court has found reasonable to draw from the evidence.

1

1. 316 Charles does business as "Cazbar," a Turkish restaurant located at 316 Charles Street in Baltimore, Maryland.  Kantar is a member of 316 Charles.  (Test. of Haluk Kantar, Nov. 5, 2020.)

2. Snowden River does business as "Homeslyce," a pizza restaurant located at 9400 Snowden River Parkway in Columbia, Maryland.  Fatih Eryigit ("Eryigit") is a member of Snowden River.  (Kantar Test., Nov. 6, 2020; Test. of Fatih Eryigit, Nov. 6, 2020.)  The Court refers to this restaurant as "Homeslyce Columbia."

3. 336 Charles LLC ("336 Charles") also does business as "Homeslyce," a pizza restaurant located at 336 Charles Street in Baltimore, Maryland.  Kantar is a member of 336 Charles.  (Kantar Test., Nov. 6, 2020.)  336 Charles is not a party in this case.  The Court refers to this restaurant as "Homeslyce Mount Vernon."

4. Kantar is the creator and owner of Cazbar.  (Kantar Test., Nov. 5, 2020.)

5. Kantar is also a creator of Homeslyce, which now has locations in Maryland and D.C.  (Kantar Test., Nov. 5, 2020.)

6. Another Homeslyce restaurant is located at 1741 Light Street in Baltimore, Maryland.  (Kantar Test., Nov. 5, 2020).  The Court refers to this restaurant as "Homeslyce Federal Hill."

7. Kantar is an owner of multiple Homeslyce locations.  He currently owns Homeslyce Mount Vernon and Homeslyce Federal Hill.  Previously, he also owned Homeslyce Columbia, but sold it to Eryigit in 2017.  (Kantar Test. Nov. 5, 2020; Eryigit Test., Nov. 6, 2020.)

8. Prior to taking over ownership of Homeslyce Columbia, Eryigit had worked with Kantar at the Homeslyce restaurants since 2014.  (Eryigit Test., Nov. 6, 2020.)

9. Ramirez came to the United States from Honduras and began working for Kantar at Homeslyce Federal Hill in October 2015.  His primary job duties included washing dishes and preparing food for patrons.  (Test. of Hernand Ramirez, Nov. 5, 2020.)

10. In March 2016, Ramirez left his job at Homeslyce Federal Hill and started working at Homeslyce Mount Vernon.  (Ramirez Test., Nov. 5, 2020.)

11. Ramirez worked six days a week at Homeslyce Mount Vernon, every day except Tuesday. His schedule regularly included shifts from 10 AM to 11 PM.  He sometimes worked as many as seventy-three hours in one week.  On average, he worked sixty-four hours per week.  (Ramirez Test., Nov. 5, 2020; Pl.'s Ex. 8.)

12. Ramirez was paid a flat $1200 every two weeks while working at Homeslyce Mount Vernon.  (Ramirez Test., Nov. 5, 2020.)

13. Kantar managed the Homeslyce Mount Vernon restaurant.  (Ramirez Test., Nov. 5, 2020).

14. In October 2016, Ramirez left his job at Homeslyce Mount Vernon to work for an unrelated establishment, because he hoped to earn better pay.  (Ramirez Test., Nov. 5, 2020.)

15. Ramirez also worked for a brief time period at Cazbar, but makes no claims in this case related to his employment there.  (Ramirez Test., Nov. 5, 2020.)

16. In March 2017, Ramirez started working at Homeslyce again, this time at the Columbia location.  Eryigit suggested Ramirez could make more money working at Homeslyce Columbia.  He was again hired as a kitchen staff employee, and his duties included cooking and preparing food.  (Ramirez Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020.)

17. At Homeslyce Columbia, Ramirez again worked six days a week and had Tuesdays off. He worked schedules with shifts from 10 AM to 11 PM, 11 AM to 12 PM, 3 PM to 11 PM,

and 3 PM to 12 PM.  On average, he worked sixty-two hours per week.  (Ramirez Test., Nov. 5, 2020; Pl.'s Ex. 2.)

18.  While working at Homeslyce Columbia, he also rented a room from Eryigit at a home in Columbia.  Another Homeslyce Columbia kitchen staff employee, Kelvin Rodriguez ("Rodriguez") also lived in the home and paid rent to Eryigit.  Previously, Kantar owned the home.  (Ramirez Test., Nov. 5, 2020; Test. of Kelvin Rodriguez-Doubon, Nov. 5, 2020; Kantar Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020.)

19.  Rodriguez worked hours similar to Ramirez while he was employed at Homeslyce Columbia.  (Rodriguez Test., Nov. 5, 2020; Eryigit Test. Nov. 6, 2020; Pl.'s Ex. 2.)

20.  Eryigit provided Ramirez transportation to and from work.  (Ramirez Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020.)

21.  Ramirez was paid a flat salary every two weeks at Homeslyce Columbia.  He started at $1,200.  In November 2017, his pay was increased to $1,300 every two weeks.  Eventually in September 2018, his pay was increased again to $1,400 every two weeks.[1]  (Ramirez Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020; Pl.'s Ex. 1; Pl.'s Ex. 13.)

---

[1] Both Ramirez and Eryigit testified that Ramirez's biweekly salary started at $1,200 and increased to $1,300 then $1,400.  No testimony was offered on the approximate dates when these pay raises occurred.  In his Complaint, Ramirez claimed the pay increases took place in the middle of November 2017 and the beginning of September 2018.  *See* ECF 1 ¶ 19.  Copies of Ramirez's paychecks generally reflect this timeline, *see* Pl.'s Ex. 1; Pl.'s Ex. 13, however, the court notes three discrepancies.  First, one check from March 2018 was for $1,200 instead of $1,300.  Pl.'s Ex. 1 at 3.  Additionally, one check from July 2018 and one check from August 2018 were both for $1,400 instead of $1,300.  Pl.'s Ex. 1 at 8.  The Court has found no explanation for these inconsistencies.  Still, the Court finds there is reasonable evidence to infer Ramirez was paid in accordance with the schedule described in his Complaint. The Court choses to disregard these unexplained disparities, as cumulatively they permit a lesser recovery to Ramirez and do not inflict greater liability on Defendants.

22. Ramirez asked Eryigit for a pay raise, but Eryigit explained he would need to discuss the issue with Kantar before increasing Ramirez's salary.  (Ramirez Test., Nov. 5, 2020.)

23. Neither Homeslyce Mount Vernon nor Homeslyce Columbia produced records of the hours Ramirez worked or wages he earned.  (Pl.'s Ex. 6.)

24. Eryigit acted as one of Ramirez's supervisors.  He worked at the Homeslyce Columbia restaurant daily, overseeing the restaurant's operations.  (Ramirez Test., Nov. 5, 2020; Rodriguez Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020; Kantar Test., Nov. 5, 2020.)

25. Kantar also exercised significant control over Ramirez's wages and the conditions of his employment.  (Ramirez Test., Nov. 5, 2020; Kantar Test., Nov. 5–6, 2020.)

26. Kantar was at Homeslyce Columbia on at least a weekly basis.  He commonly came to the restaurant on Fridays and Saturdays.  (Ramirez Test., Nov. 5, 2020; Rodriguez Test., Nov. 5, 2020; Kantar Test., Nov. 5, 2020.)

27. Kantar regularly signed paychecks for employees at Homeslyce Columbia and brought the paychecks to the employees at the restaurant on paydays.  (Ramirez Test., Nov. 5, 2020; Rodriguez Test., Nov. 5, 2020; Kantar Test., Nov. 5, 2020.)

28. It is important to Kantar that all of the Homeslyce restaurants provide a uniform quality of service to their patrons.  Kantar would make on-the-spot corrections to employees at Homeslyce Columbia if he thought they were not performing to this standard, for example, if he thought the staff's appearance was unprofessional or the food was being prepared improperly.  (Kantar Test., Nov. 5, 2020.)

29. While at Homeslyce Columbia, Kantar also helped out in other ways such as answering the phone or bringing food out from the kitchen when the restaurant was busy.  (Ramirez Test., Nov. 5, 2020.)

30. In October 2018, Kantar was at Homeslyce Columbia while Ramirez and Rodriguez were both working.  Kantar thought Ramirez was not preparing salads correctly, so he corrected Ramirez and tried to explain a different way of doing it.  Ramirez attempted to comply with Kantar's instructions, however, Kantar was still not satisfied with how Ramirez was dressing the salads.  Kantar continued trying to explain the proper technique.  The interaction ultimately became emotionally charged.  Kantar eventually told Ramirez to "Go, Motherf***er!"  Ramirez and Rodriguez both immediately left the restaurant in the middle of their shifts and have not worked at Homeslyce since.  (Ramirez Test., Nov. 5, 2020; Rodriguez Test., Nov. 5, 2020; Kantar Test., Nov. 5, 2020.)

31. Kantar has a "management agreement" with Eryigit and the owners of other Homeslyce locations, under which he provides services such as bookkeeping and menu development.  Eryigit pays Kantar a monthly fee for these services.  (Kantar Test., Nov. 6, 2020.)

32. Kantar also provides other "management" services to Homeslyce Columbia and the rest of the Homeslyce locations.  He provided a template for employee scheduling entitled "Homeslyce/Cazbar Schedule by Employee."  (Kantar Test., Nov. 5, 2020; Pl.'s Ex. 2.)

33. All of the Homeslyce restaurants use one employee handbook with common policies for employees, including policies on overtime. (Kantar Test., Nov. 5, 2020; Pl.'s Ex. 15.)

34. The Homeslyce restaurants and Cazbar share one bookkeeper, who works out of the Cazbar location at 316 Charles Street.  (Kantar Test., Nov. 6, 2020.)

35. Each restaurant is responsible for processing the payroll for its employees.  Each restaurant sends the amount owed to its employees to the bookkeeping office, where the checks are printed and signed by Kantar or another business associate in the office.  (Kantar Test., Nov. 6, 2020.)

36. The mailing address associated with Snowden River's Bank of America checking account is 316 Charles Street, Baltimore, Maryland. The signature card for the account lists Kantar and Dogan Solis as signatories, but does not list Eryigit. (Pl.'s Ex. 10; Pl.'s Ex. 12.)

37. In addition to signing payroll checks for Snowden River, Kantar has frequently signed checks for Homeslyce Columbia's vendors, such as pest control services and food suppliers. (Kantar Test., Nov. 6, 2020; Pl.'s Ex. 17.)

38. Kantar and Eryigit understood their obligation under the law to pay Ramirez overtime wages when he worked more than forty hours per week. They were not under the impression that their business or Ramirez were exempt from these legal obligations. (Kantar Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020.)

39. Despite regularly working more than forty hours per week, Ramirez was not paid at a higher rate for his overtime hours. He was paid the same biweekly salary regardless of the number of hours worked. (Ramirez Test., Nov. 5, 2020; Eryigit Test., Nov. 6, 2020; Pl.'s Ex. 1; Pl's Ex. 13.)

## II.    Conclusions of Law

To prove a claim under the FLSA for unpaid overtime wages, a plaintiff must show (1) employment by defendant during the relevant time; (2) qualification as a covered employee under the FLSA statute, by virtue of being employed in an enterprise engaged in commerce or in the production of goods for commerce; and (3) defendant's failure to pay overtime wages. *See, e.g.*, *Jahn v. Tiffin Holdings, Inc.*, No. SAG-18-1782, 2020 WL 1285507, at *3 (D. Md. Mar. 28, 2020); *Quinonez v. Reliable Auto Glass, LLC*, No. CV-12-000452-PHX-GMS, 2012 WL 2848426, at *2 (D. Ariz. July 11, 2012). The elements to prove an overtime claim under the MWHL and the MWPCL are essentially the same. *See McFeely v. Jackson Street Entm't, LLC*, 47 F. Supp. 3d

260, 267 n.6 (D. Md. 2014) (explaining the MWHL is the "state statutory equivalent of the FLSA"); *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625–26 (Md. 2014) (explaining that "both the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages"). Defendants do not dispute that Ramirez is a qualified employee. Therefore, the Court will only discuss the first and third elements.

### A. Ramirez's Employers

An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); Md. Code Ann. Lab. & Empl. § 3-401(b); *see also id.* § 3-501(b) (defining "Employer" as "any person who employs an individual in the State"). More than one entity may jointly employ a worker. *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017). Additionally, an individual may be liable as an employer. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016); *Newell v. Runnels*, 407 Md. 578, 649–52 (2009); *Campusano v. Lusitano Const. LLC*, 208 Md. App. 29 (2012). Undisputedly, Ramirez was employed by Snowden River during the time he worked at Homeslyce Columbia. Ramirez also argues that Kantar is liable as an individual employer and that 316 Charles and Snowden River acted as joint employers. The Court addresses each of these arguments in turn.

### 1. Individual Employer Liability

An individual can constitute an "employer" covered by the FLSA if the "economic realities of the individual's relationship with the putative employee" demonstrate that the individual is a covered "employer." *Iraheta v. Lam Yuen, LLC*, No. DKC-12-1426, 2012 WL 5995689, at *3 (D. Md. Nov. 20, 2012); *see also Newell v. Runnels*, 407 Md. 578, 649–52 (2009) (applying the same test to MWHL claims); *Campusano v. Lusitano Const. LLC*, 208 Md. App. 29 (2012) (applying the "economic reality" test to the MWPCL). To make this determination, courts look to a number

of factors, including whether the individual "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016); *Iraheta*, 2012 WL 5995689 at *3; *see also Newell*, 407 Md. at 651–52. No one factor in this analysis is dispositive. *Kerr*, 824 F.3d at 83; *Iraheta*, 2012 WL 5995689 at *3. Kantar argues that he cannot be held liable as an individual employer because he did not have sufficient control over Ramirez's work for Homeslyce Columbia. After weighing the "economic realities," though, this Court concludes the opposite.

First, Ramirez testified that he was both hired and fired by Kantar. However, he also testified that it was Eryigit who suggested that Ramirez start working at Homeslyce Columbia. This is consistent with Eryigit's testimony that it was Eryigit, not Kantar, that had the power to hire and fire kitchen workers for Homeslyce Columbia. Kantar testified that Ramirez was not fired from Homeslyce Columbia, but instead quit after they had an altercation during one of Ramirez's shifts. The facts of the incident on Ramirez's last day seem to substantiate that he left the restaurant voluntarily as a result of the dispute and was not fired. Thus, at best, there is conflicting evidence regarding whether Kantar could hire and fire employees for Homeslyce Columbia.

Even if Kantar lacked authority to hire and fire kitchen workers like Ramirez at Homeslyce Columbia, the record shows he had significant involvement in their conditions of employment. Kantar created Homeslyce and owns multiple Homeslyce locations. While he sold Homeslyce Columbia to Eryigit in 2017, he maintains an ongoing agreement with Eryigit, whereby he shares "management" and "bookkeeping" expenses among Cazbar and all of the Homeslyce locations. The shared "management" services include a common "Homeslyce Employee Handbook" with shared employee policies and templates for employee scheduling. Ramirez testified that Kantar

came to Homeslyce Columbia on at least a weekly basis. Both Ramirez and Rodriguez testified that Kantar handed out paychecks at Homeslyce Columbia and supervised employees there. Kantar, himself, admitted that it was important for him to ensure that a uniform standard of service was provided at all of the Homeslyce restaurants. This meant he would make on-the-spot corrections to employees at Homeslyce Columbia, when he thought their performance was not meeting the standard, such as when uniforms looked unkempt or food was prepared incorrectly. Indeed, it was one such on-the-spot correction, regarding the plating of salads, which led to the end of Ramirez's employment. Even if Kantar did not technically fire Ramirez in that moment, he clearly ordered him to leave the Homeslyce Columbia premises during a work shift. Thus, the Court concludes Kantar had significant supervisory control over Ramirez while Ramirez worked at Homeslyce Columbia.

Additionally, Kantar determined Ramirez's pay. Kantar testified that each of the Homeslyce restaurants was responsible for calculating payroll for its employees. However, all of the paychecks were printed at a central office in the Cazbar restaurant. Kantar regularly signed the paychecks for Homeslyce Columbia and delivered them to the restaurant employees. Indeed, some of the paychecks Ramirez received from Snowden River were signed by Kantar. Additionally, Ramirez testified that he asked Eryigit for a raise, but Eryigit told him he needed to get permission from Kantar to increase Ramirez's salary. This uncontroverted testimony shows that Kantar determined the rate and method of Ramirez's pay, even if he was not responsible for tabulating or submitting weekly payroll hours at Homeslyce Columbia.

As discussed *infra*, it appears that no one, including Kantar, Eryigit, or any of the other Defendants kept the required employment records for Ramirez. However, Kantar testified that all of the Homeslyce restaurants shared one bookkeeper, who worked out of the Cazbar location

where, among other things, paychecks were printed and signed. Because of the absence of recordkeeping altogether, the Court cannot give this factor much weight. However, that Kantar signed some of Ramirez's paychecks at a central office suggests his involvement, to some degree, in keeping track of Ramirez's employment.

Overall, the record shows Kantar exercised significant control over the standards and conditions of Ramirez's employment and compensation. Although Kantar may not have had daily supervision over Ramirez, "continual supervision is not a requirement for employer status." *Perez v. Ocean View Seafood Rest., Inc.*, 217 F. Supp. 3d 868, 879 (D.S.C. 2016) (holding a "silent partner" of a restaurant was nevertheless liable as an employer). In weighing the economic realities factors, the Court concludes that Kantar is liable as an individual employer.

### 2. Joint Employer Liability

Two persons or entities may be jointly liable employers if the entities are "'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." *Salinas*, 848 F.3d at 141 (quoting 29 C.F.R. § 791.2(a)). Courts in the Fourth Circuit make this determination by considering six non-exhaustive factors:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly— hire or fire the worker or modify the terms and conditions of the worker's employment;

> (3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141–42. After analyzing these factors, the Court concludes that 316 Charles and Snowden River did not act as a joint employers of Ramirez.

316 Charles (Cazbar) and Snowden River (Homeslyce Columbia) have an ongoing business relationship. Both restaurants were created by Kantar and continue to be overseen and managed in part by Kantar. The restaurants also share one bookkeeper who prints paychecks for employees. But the employee paychecks and other expenses are paid from separate bank accounts, and each restaurant is responsible for processing its own payroll before forwarding to the bookkeeping office. Although the Homeslyce restaurants use a common employee handbook, there is no evidence that Cazbar also uses the same handbook or policies for its employees. Ramirez worked at Cazbar for a short period of time before he worked at Homeslyce Columbia, but his employment at the restaurants never overlapped, and he never returned to working at Cazbar. Indeed, there was no evidence presented that kitchen workers or other employees routinely work at both restaurants simultaneously. Thus, although the third factor may weigh in favor of joint employment because of the two restaurants' ongoing business relationship, none of the other factors indicate they had shared responsibility or control over Ramirez. After weighing

"the circumstances of the whole activity," the Court concludes the relationship between 316 Charles and Snowden River did not involve the joint employment of Ramirez.

In sum, Ramirez was employed both by Kantar and by Snowden River while working at Homeslyce Columbia from March 2017 to October 2018.[2]   Ramirez was not employed by 316 Charles during the time period in which Ramirez claims he is owed unpaid overtime wages, and, therefore, 316 Charles is not liable for any of Ramirez's claims.

### B.  Uncompensated Overtime Hours

Ramirez alleges he was not properly paid overtime wages while employed at Defendants' restaurants.  Overtime includes any hours worked in excess of forty hours in one workweek and must be compensated at least "one and one-half times the regular rate."  29 U.S.C. § 207(a)(1); Md. Code Ann. Lab. & Empl. §§ 3-415, 3-420.  An employee plaintiff "has the burden of proving that he performed work for which he was not properly compensated."  *Alston v. DIRECTV, Inc.*, 254 F. Supp. 3d 765, 787 (D.S.C. May 26, 2017) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)).  However, employers, not workers, have an obligation to "make, keep, and preserve" records of the hours worked and wages earned by their employees.  29 U.S.C. § 211(c); 29 C.F.R. § 516.2; Md. Code Ann. Lab. & Empl. § 3-424.  When these records are inadequate, an employee is only required to provide "sufficient evidence" of the hours worked "as a matter of just and reasonable inference."  *Wirtz v. Durham Sandwich Co.*, 367 F.2d 810, 812 (4th Cir. 1966) (quoting *Mt. Clemens*, 328 U.S. at 687) (affirming damages award in favor of plaintiff based solely on plaintiff's testimony).  Then, "[t]he burden . . . shifts to the employer to come forward with

---

[2] Ramirez was also employed by Kantar (and a non-party entity, 336 Charles LLC) when he worked at Homeslyce Mount Vernon until October 2016.  However, as this lawsuit was filed in November 2019, his claims for unpaid overtime wages from Homeslyce Mount Vernon are barred by the statute of limitations.  *See* 29 U.S.C. § 255(a) (stating the statute of limitations is, at most, three years).

evidence of the precise work performed or with evidence to negative the reasonableness of the inference to be drawn from employee's evidence." *Mt. Clemons*, 328 U.S. at 687–88 (explaining the law does not "penalize the employee" because the employer failed to keep proper records).

Defendants could not produce any records of the hours worked by or wages paid to Ramirez. Ramirez presented credible evidence that he worked in excess of sixty hours a week and was not paid overtime wages. His testimony, the corroborating testimony of a coworker, Kelvin Rodriguez, and a copy of a weekly employee schedule, establish by a reasonable inference that Ramirez worked an average of sixty-two hours per week while employed at Homeslyce Columbia.

Defendants relied on Eryigit's testimony, in which he disputed the number of hours Ramirez worked, claiming that Homeslyce Columbia employees only worked six hours per day and less than forty hours per week. Notably, though, when confronted with an employee schedule from September 2018, Eryigit conceded that Ramirez worked sixty-two hours during that particular week. Eryigit stated that this was not a typical workweek, and that Ramirez was only working additional hours because Eryigit went out of town and needed Ramirez to cover for him. However, all of the employees on the September 17–23, 2018 schedule were working shifts much longer than the six-hour shifts Eryigit claimed to ordinarily assign his employees. All five employees on this schedule worked six days of the week and worked eleven hours or more at least twice during the week, which is consistent with the normal weekly schedule Ramirez and Rodriguez described. *See* Pl.'s Ex. 2. It defies logic to think that, for example, Homeslyce Columbia's dishwasher would have had to work abnormally long hours that particular week because of Eryigit's absence. Thus, this Court does not find Eryigit's testimony on this largely dispositive point to be credible.

Furthermore, it is undisputed that Ramirez was paid a flat rate every two weeks and that his paychecks did not include payment for overtime hours. Eryigit's testimony that he paid Ramirez in cash for overtime is not credible, both because of his larger credibility issue and because it would be both unusual and contrary to law to pay employees using traditional payroll methods for regular hours and to make unrecorded cash payments for overtime. Defendants therefore did not negate Ramirez's evidence of the overtime hours he worked. The Court concludes that Ramirez worked twenty-two overtime hours per week while he was employed at Homeslyce Columbia and that he was not compensated accordingly.

## C. Statute of Limitations

The MWHL and the WMPCL have a statute of limitations of three years. *See* Md. Code Ann. Cts. & Jud. Proc. § 5-101; *Clayton v. Delmarva Cmty. Servs., Inc.*, 447 F. Supp. 3d 404, 411 (D. Md. 2020), *appeal dismissed*, No. 20-1482, 2020 WL 6162635 (4th Cir. June 9, 2020). Under the FLSA, the statute of limitations for unpaid overtime claims is two years, unless there is a "willful violation," which extends the limitations window to three years. 29 U.S.C. § 255(a). A violation is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015) (quoting *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011)). Courts have found employers did not act willfully where they believed their employees were exempt from the statute or otherwise did not understand their obligations under the law. *E.g.*, *Williams v. Loved Ones in Home Care, LLC*, No. 2:17-CV-04162, 2018 WL 3676923, at *3 (S.D.W. Va. Aug. 2, 2018) (finding employer was not willful where there was no evidence they knew plaintiff should be classified as a nonexempt employee); *Regan v. City of Charleston*, 142 F. Supp. 3d 442, 463 (D.S.C. 2015) (finding FLSA violation was not willful where

employer "attempted on several occasions" to ensure it complied with the law but its legal conclusions "turned out to be incorrect in some respects"); *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 617–18 (E.D. Va. 2014) (finding employers were not willful or reckless where they relied on authority indicating employee was exempt from the statute).   Conversely, where employers are aware of their obligations under the FLSA and, nonetheless, fail to comply, the violation is willful. *E.g.*, *Martin v. Deiriggi*, 985 F.2d 129, 136 (4th Cir. 1992).

Here, defendants surely knew of their obligation to pay Ramirez overtime wages, but simply failed to do so.  Kantar is an experienced restaurateur and gave no indication that he did not understand the obligation to pay kitchen workers overtime wages.  Similarly, Eryigit expressly admitted he understood the legal requirement to pay Ramirez overtime wages and demonstrated his ability to calculate overtime pay.  Moreover, there is no indication Ramirez was working extra hours without Defendants' knowledge.   Indeed, Defendants frequently provided Ramirez transportation to and from work, and would therefore know how long he was working. Defendants' failure to keep required employment records further indicates their decision to disregard legal requirements for handling employee compensation.  Thus, the Court concludes that Defendants' FLSA violations were willful and applies the three-year statute of limitations to Ramirez's claims.  As Ramirez filed this lawsuit on November 11, 2019, his unpaid overtime claims that accrued on or after November 11, 2016 are not time-barred.

### D.  Unpaid Overtime Pay Calculations

To determine how much overtime pay Ramirez is owed, the Court first determines his regular hourly rate.  For every hour worked in excess of forty hours in each workweek, an employee should be paid 150% of the regular hourly rate.  29 U.S.C. § 207(a)(1).  To determine the regular rate for a salaried employee, the salary is divided by the actual hours worked.  *See* 29

C.F.R. §§ 778.109, 778.113.  Ramirez testified that he was initially paid $1,200 every two weeks and later was paid $1,300 every two weeks, and eventually $1,400 every two weeks.  Ramirez also submitted copies of a number of paychecks reflecting these amounts.  As discussed, *supra*, the Court finds Ramirez worked sixty-two hours per week at Homeslyce Columbia.  Ramirez's regular hourly rate of pay therefore was initially $9.68, then increased to $10.48, and $11.29.  After determining the regular rate for each week, the Court calculates Ramirez's back pay by multiplying every overtime hour by fifty percent of the regular rate.  The Court concludes Ramirez is owed $9,430.22 in overtime pay from his eighty-four weeks of work at Homeslyce Columbia.[3]  *See* Appendix.

### E.  Enhanced Damages

An employee seeking unpaid overtime wages under the FLSA may also recover liquidated damages.  29 U.S.C. § 216(b).  However, if the employer shows that any failure to pay overtime wages was "in good faith" and the employer "had reasonable grounds for believing that his act or omission was not a violation," then the court has the discretion to refuse to award any amount of

---

[3] Ramirez's Complaint and the Damages Calculations he submitted with his Pretrial Statement allege that Ramirez worked for Homeslyce Mount Vernon through November 2016. ECF 1 ¶¶ 11, 19; ECF 18-1.  However, no evidence was presented that showed Ramirez worked for Homeslyce during that month.  Indeed, Ramirez testified that he left Homeslyce Mount Vernon in October 2016.  Therefore, the Court finds Ramirez did not earn any uncompensated overtime pay in November 2016 and has reduced the damages he requested accordingly.  The Court has also subtracted overtime wages earned in October 2016 from Ramirez's Damages Calculations because they are barred by the statute of limitations, as discussed in the previous subsection of this opinion.

Additionally, in his Damages Calculations, Ramirez claimed that when he first worked at Homeslyce Columbia in March 2017, he was working sixty-four hours per week and later began working sixty-two hours per week from March 2018 through October 2018. ECF 18-1.  However, Ramirez did not present any evidence that his average workweek was reduced by two hours in March 2018 or at any other time.  The Court concludes that the evidence presented shows that Ramirez worked an average of sixty-two hours per week during the duration of his employment at Homeslyce Columbia, and the Court has adjusted his Damages Calculations to reflect this finding.

liquidated damages. 29 U.S.C. § 260; *Braxton v. Jackson*, 782 F. App'x 240, 245 (4th Cir. 2019). Good faith "requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Braxton*, 782 F. App'x at 245 (quoting *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). For the same reasons the Court has determined Defendants' FLSA violations were willful, the Court concludes Defendants did not make a "good faith" attempt to comply with the law. *See Burgess v. Catawba County*, 805 F. Supp. 341, 351 (W.D.N.C. 1992) (explaining that a finding of willfulness "necessarily precludes a finding of good faith").

Similarly, under the MWPCL, if an employer withheld wages "not as a result of a bona fide dispute," the employee may collect enhanced damages of up to three times the wages owed. Md. Code Ann. Lab. & Empl. § 3-507.2; *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 667 (2014). However, a court cannot allow "double recovery," and, therefore, Ramirez can only recover liquidated damages under the FLSA or treble damages under the MWPCL, "but not both." *Melendez v. Spilled Milk Catering, LLC*, No. PWG-18-235, 2019 WL 2921782, at *3 (D. Md. July 8, 2019) (first quoting *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980), then quoting *Quiroz v. Wilhelm Com. Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011)). When there is no evidence that wages were withheld based on a bona fide dispute, but plaintiffs also do not provide evidence of consequential damages they suffered due to the underpayments, "[i]t has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL." *Sanabria v. Cocody, Inc.*, No. DKC 16-0365, 2017 WL 3022990, at *4 (D. Md. July 17, 2017) (quoting *Villatoro v. CTS & Assocs., Inc.*, No. DKC-14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016)). Such is the case here. The Court,

therefore, awards Ramirez liquidated damages equal in amount to the unpaid overtime compensation he is owed. *See* 29 U.S.C. § 216(b).

### F. Prejudgment and Postjudgment Interest

Ramirez also requests prejudgment interest. Because the liquidated damages award "more than adequately compensates" for the delayed payment, the Court declines to award Ramirez interest. *See Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1334 (4th Cir. 1974) (affirming decision not to award prejudgment interest in FLSA overtime case); *Vanegas v. Diaz Granados, Inc.*, No. PWG-15-2298, 2017 WL 345855, at *6 (D. Md. Jan. 24, 2017) (declining to award prejudgment interest where liquidated damages were already awarded); *see also Kennedy v. A Touch of Patience Shared Housing, Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011) ("FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore, . . . a claimant could not recover both prejudgment interest and liquidated damages." (quoting *Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir. 1990))). Postjudgment interest, however, is available in accordance with 28 U.S.C. § 1961. *See Kennedy*, 779 F. Supp. 2d at 527.

### G. Attorney's Fees and Costs

Ramirez is entitled to his reasonable attorney's fees and court costs. *See* 29 U.S.C. § 216(b); Md. Code Ann. Lab. & Empl. § 3-427(d). The accompanying Order provides a schedule under which Ramirez may submit a request for attorney's fees in accordance with the Local Rules of this Court.

### III.     Conclusion

For the foregoing reasons, the Court finds Kantar and Snowden River jointly and severally liable to Ramirez for $9,403.22 in lost wages and $9,403.22 in liquidated damages, or a total of $18,806.44, plus reasonable attorneys' fees and costs.  A separate Order follows.


Dated: <u>December 16, 2020</u>                              <u>            /s/            </u>
                                                        Stephanie A. Gallagher
                                                        United States District Judge

**APPENDIX**

**Ramirez v. 316 Charles LLC**

**Damages Calculations**

| Week Start | Week End | Hours Worked | Regular Hours | Overtime Hours | Amount Paid | Effective Hourly Rate | Overtime Rate | Proper Pay | Amount Owed |
|---|---|---|---|---|---|---|---|---|---|
| 02/27/17 | 03/05/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 03/06/17 | 03/12/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 03/13/17 | 03/19/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 03/20/17 | 03/26/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 03/27/17 | 04/02/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 04/03/17 | 04/09/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 04/10/17 | 04/16/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 04/17/17 | 04/23/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 04/24/17 | 04/30/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 05/01/17 | 05/07/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 05/08/17 | 05/14/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 05/15/17 | 05/21/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 05/22/17 | 05/28/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 05/29/17 | 06/04/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 06/05/17 | 06/11/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 06/12/17 | 06/18/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 06/19/17 | 06/25/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 06/26/17 | 07/02/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 07/03/17 | 07/09/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 07/10/17 | 07/16/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 07/17/17 | 07/23/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 07/24/17 | 07/30/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 07/31/17 | 08/06/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 08/07/17 | 08/13/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 08/14/17 | 08/20/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 08/21/17 | 08/27/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 08/28/17 | 09/03/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 09/04/17 | 09/10/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 09/11/17 | 09/17/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 09/18/17 | 09/24/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 09/25/17 | 10/01/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 10/02/17 | 10/08/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 10/09/17 | 10/15/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 10/16/17 | 10/22/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 10/23/17 | 10/29/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 10/30/17 | 11/05/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 11/06/17 | 11/12/17 | 62.00 | 40.00 | 22 | $600.00 | $9.68 | $4.84 | $706.45 | $106.45 |
| 11/13/17 | 11/19/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 11/20/17 | 11/26/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 11/27/17 | 12/03/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 12/04/17 | 12/10/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12/11/17 | 12/17/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 12/18/17 | 12/24/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 12/25/17 | 12/31/17 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 01/01/18 | 01/07/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 01/08/18 | 01/14/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 01/15/18 | 01/21/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 01/22/18 | 01/28/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 01/29/18 | 02/04/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 02/05/18 | 02/11/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 02/12/18 | 02/18/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 02/19/18 | 02/25/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 02/26/18 | 03/04/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 03/05/18 | 03/11/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 03/12/18 | 03/18/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 03/19/18 | 03/25/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 03/26/18 | 04/01/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 04/02/18 | 04/08/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 04/09/18 | 04/15/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 04/16/18 | 04/22/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 04/23/18 | 04/29/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 04/30/18 | 05/06/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 05/07/18 | 05/13/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 05/14/18 | 05/20/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 05/21/18 | 05/27/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 05/28/18 | 06/03/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 06/04/18 | 06/10/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 06/11/18 | 06/17/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 06/18/18 | 06/24/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 06/25/18 | 07/01/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 07/02/18 | 07/08/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 07/09/18 | 07/15/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 07/16/18 | 07/22/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 07/23/18 | 07/29/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 07/30/18 | 08/05/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 08/06/18 | 08/12/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 08/13/18 | 08/19/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 08/20/18 | 08/26/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 08/27/18 | 09/02/18 | 62.00 | 40.00 | 22 | $650.00 | $10.48 | $5.24 | $765.32 | $115.32 |
| 09/03/18 | 09/09/18 | 62.00 | 40.00 | 22 | $700.00 | $11.29 | $5.65 | $824.19 | $124.19 |
| 09/10/18 | 09/16/18 | 62.00 | 40.00 | 22 | $700.00 | $11.29 | $5.65 | $824.19 | $124.19 |
| 09/17/18 | 09/23/18 | 62.00 | 40.00 | 22 | $700.00 | $11.29 | $5.65 | $824.19 | $124.19 |
| 09/24/18 | 09/30/18 | 62.00 | 40.00 | 22 | $700.00 | $11.29 | $5.65 | $824.19 | $124.19 |
| 10/01/18 | 10/07/18 | 62.00 | 40.00 | 22 | $700.00 | $11.29 | $5.65 | $824.19 | $124.19 |
| **Total Unpaid Overtime** | | | | | | | | | **$9,403.22** |
| **x2 (FLSA Liquidated Damages)** | | | | | | | | | **$18,806.44** |