IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**HERNAND RAMIREZ,**

        **Plaintiff,**

v.                                                **Civil Case No.: SAG-19-03252**

**316 CHALRES, LLC,** *et al.*,

        **Defendants.**

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Hernand Ramirez ("Plaintiff") has filed a Motion for Attorneys' Fees, ECF 37. Defendants 9400 Snowden River, LLC, and Haluk Kantar (collectively "Defendants") filed responses in opposition, ECF 41 and 42, and Plaintiff replied, ECF 43. Notwithstanding Defendants' requests for a hearing, the Court finds no hearing is necessary.[1]  *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Plaintiff's Motion will be granted.

---

[1] Defendants had ample opportunity to present their arguments against Plaintiff's request for fees and costs in their opposition filings. The Court is not required to grant Defendants a hearing to fully flesh out their arguments where they simply declined to do so in their written briefs. *See, e.g.*, *E.E.O.C. v. Greenbriar Pontiac-Oldsmobile-MC Trucks-KIA, Inc.*, 314 F. Supp. 2d 581, 585 (E.D. Va. 2004) (denying defendant's request for a hearing and granting plaintiff's request for attorneys' fees); *cf. In re Kunstler*, 914 F.2d 505, 521 (4th Cir. 1990) ("When an attorney has failed to present necessary factual support for claims despite several opportunities to do so . . . further hearing on the . . . issue may well be not only unnecessary but also a waste of judicial resources."). Doing so not only would expend additional judicial resources but also would cause the parties to incur additional attorneys' fees, potentially chargeable to Defendants. *See Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 6410846, at *7 (D. Md. Dec. 6, 2013) (explaining that "it is settled law in this circuit" for a party to recover expenses occurred defending an entitlement to attorneys' fees).

**I.     BACKGROUND**

Plaintiff filed a complaint in November, 2019, alleging Defendants failed to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., §§ 3-401 to 3-431, and the Maryland Wages Payment and Collection Law ("MWPCL"), *Id.* §§ 3-501 to 3-509, and seeking $34,900.00 in damages.  ECF 1.  After a two-day bench trial, the Court issued a memorandum opinion and order on December 17, 2020, granting judgment in favor of Plaintiff on all counts and awarding Plaintiff $18,806.44 in damages.[2]  ECF 30; ECF 31.  Defendants filed motions to alter or amend the Judgment on January 12, 2021, ECF 34 and 35, which the Court denied.  ECF 44.  The instant motion for attorneys' fees followed.

**II.    LEGAL STANDARDS**

To calculate an appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008).  A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual.  *Thompson v. HUD*, No. MJG–95–309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)); *see also Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995).  In exercising that discretion, this Court is "bound" to apply the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and initially adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).  *McAfee v.*

---

[2] Plaintiff originally named a third defendant, 316 Charles, LLC, but it was found not liable for any of Plaintiff's claims.  *See* ECF 30 at 11–13.

*Boczar*, 738 F.3d 81, 88 & n.5 (4th Cir. 2013); *see also Thompson*, 2002 WL 31777631, at *6. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Thompson*, 2002 WL 31777631, at *6 n.19 (quoting *Johnson*, 488 F.2d at 717–19). Once the lodestar amount has been determined, the Court "must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)). Finally, the Court must analyze the "degree of success enjoyed by the plaintiff," and determine whether the entire claimed fees amount, or "some percentage" of that amount, is a reasonable award. *Id.* (quoting *Robinson*, 560 F.3d at 244).

### III. ANALYSIS

Both federal and Maryland law require that Plaintiff be awarded his reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. § 3-427(d)(1), 3-507(b)(1). The Court therefore proceeds to analyze Plaintiff's requested awards of costs and attorneys' fees, respectively.

#### A. Costs

District courts are vested with discretion to determine, in FLSA cases, which costs may be awarded. *Roy v. Cnty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998). "Examples of types of costs that have been charged to losing defendants include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Almendarez v. J.T.T.*

*Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (citing *Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 598 F. Supp. 1262, 1289–90 (D. Md. 1984)). Plaintiff here seeks an award of $3,697.45 in costs, consisting of $400.00 in filing fees, $405.00 in service of process fees, $142.45 in document production fees, and $2,750.00 in trial interpretation fees. ECF 37-2. The charges are substantiated in the legal bills and represent reasonable expenses under the circumstances of this case.

### B. Attorneys' Fees

Next, Plaintiff seeks a total of $64,245.00 in attorneys' fees, comprised of a total of 244.7 hours worked on this case by two attorneys (Mr. Justin Zelikovitz and Mr. Jonathan Tucker) and four support staff personnel (Mr. Nicolas Wulf, paralegal; Ms. Julia Gutierrez, administrative assistant; Ms. Norma Sanchez, receptionist; and Ms. Sarah Knox, law clerk). ECF 37-3; ECF 43-1. In accordance with the framework reiterated in *McAfee*, the Court turns first to determining the lodestar amount through an application of the twelve *Johnson* factors.

#### 1. Initial Lodestar Determination

The Court begins with an assessment of the time and labor expended, which is informed by two additional *Johnson* factors: the novelty and difficulty of the questions presented; and the skill required to properly perform the legal service. *See Thompson*, 2002 WL 31777631, at *6–7 (considering these three factors together). The initial burden lies with Plaintiff to demonstrate that the hours requested are, in fact, recoverable. *See, e.g.*, *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97–98 (4th Cir. 1993). "The court must . . . delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of billing judgment." *Chapman v. Ourisman Chevrolet Co.*, No. AW-08-2545, 2011 WL 2651867, at *15 (D. Md. July 1, 2011) (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)). For

many years, Appendix B to this Court's Local Rules has detailed the best practices for attorneys seeking fee awards from the Court. Application of a number of these best practices, and other considerations, results in some reductions to the hours Plaintiff's attorneys have billed.

First, the Court observes a number of entries in which Plaintiff's attorneys billed for clerical tasks, including, *inter alia*, filing documents with the Court, organizing documents, or assembling binders. Clerical work is not properly billable as legal fees to one's adversary. *See Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) (explaining such tasks are "ordinarily part of a law office's overhead (which is covered in the hourly rate)"); *Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929–30 (E.D. Va. 2015) (giving examples of non-compensable clerical work that include "collating and filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings and preparing sets of orders, document organization, creating notebooks or files and updating attorneys' calendars, assembling binders, emailing documents or logistical telephone calls with the clerk's office" (citations omitted)); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 278 n.10 (1989) (recognizing that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"). Accordingly, specific billing entries involving clerical tasks have been stricken. Moreover, in those instances in which a clerical task is subsumed within a larger billing entry (e.g., reviewing and editing a motion, and then filing the motion), the Court has reduced the time billed by 0.1 hours.

Second, this Court finds that Plaintiff's attorneys are not entitled to recover fees for time spent preparing to file an appeal or motion to reconsider the Court's post-trial judgement. No such filing was ever submitted, and, therefore, these efforts did not "contribute to the ultimate victory in the lawsuit." *See Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 839 (D. Md. 2005)

(explaining that work that is not part of "a necessary step to ultimate victory" are not chargeable in a fee petition) (quoting *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991)). Moreover, the Court is awarding attorneys' fees in accordance with its previous memorandum opinion and order granting judgment in Plaintiff's favor. Attorney time spent researching the possibility of obtaining an even more favorable judgment was not necessary to Plaintiff's success in the litigation.[3]

Third, in reviewing the Plaintiff's attorneys' billing statements, the Court notes two instances where time was billed for two attorneys participating in an inter-office meeting in violation of Guideline 2(d). *See* ECF 37-3 at 11 (Nov. 6, 2020 entries of Mr. Tucker and Mr. Zelikovitz); ECF 43-1 at 1 (Feb. 1, 2021 entries of Mr. Tucker and Mr. Zelikovitz). Guideline 2(d) in Appendix B of the Local Rules states that "only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer." Accordingly, the Court has disregarded the duplicative entries, and considered only the billing entry from the most senior attorney, Mr. Zelikovitz. *See Manning v. Mercatanti*, Civ. Nos. ELH-11-2964, ELH-12-00195, 2014 WL 1418322, at *7 (D. Md. Apr. 10, 2014) (applying Guideline 2(d) and eliminating billing entries in

---

[3] Three entries attribute attorney time to considering an appeal or motion for reconsideration. Two of the three entries also state that some of the time billed was spent "[r]eview[ing] memorandum opinion" and "[r]eview[ing] the trial opinion." ECF 37-3 at 11. The Court finds it unnecessary for two attorneys to bill time for reading a Court order or opinion. *See Jahn v. Tiffin Holdings*, No. SAG-18-1782, 2020 WL 4436375, at *4 (D. Md. Aug. 3, 2020) (allowing only one attorney to bill for reading a court opinion in accordance with Guideline 2(d) of Appendix B of the Local Rules). The Court will therefore eliminate the December 17, 2020 entry of .6 hours billed by Mr. Tucker to "Review memorandum opinion and discuss option to appeal or request consideration" and reduce the 1.5 hours billed by Mr. Zelikovitz for "Review trial opinion; legal research re: treble d[a]mages" to .7 hours. The third entry of 4.2 hours dedicated to researching and outlining a motion for reconsideration will be completely eliminated.

which more than one attorney billed for an intra-office conferences, and allowing the most senior attorney to recover for the time billed).[4]

Having considered the billing hours deductions above, the following represents the total number of allowable hours worked for each attorney and staff member:

| Attorney | Requested Hours | Recoverable Hours |
|---|---|---|
| Justin Zelikovitz | 88.7 | 86.9 |
| Jonathan Tucker | 49 | 42.5 |
| Nicolas Wulff | 23.4 | 17.9 |
| Julie Gutierrez | 7.7 | 4.5 |
| Norma Sanchez | 9 | 5.3 |
| Sarah Knox | 66.3 | 66.3 |
| **Total** | **244.7** | **223.3** |

Considering the complexity of the issues presented in this case, this Court finds that each attorney's and support staff's billed hours are reasonable. Despite Plaintiff's attempts to settle this relatively simple overtime dispute early on, the case proceeded to a two-day trial with multiple witnesses. Notwithstanding warnings from Plaintiff's counsel of the fee-shifting provisions of the FLSA, Defendants failed to concede any common ground or narrow the factual disputes. *See* ECF 37-4 (detailing the fees and costs already expended in the litigation); ECF 3 (answering Plaintiff's Complaint with a general denial of all allegations). Additionally, because Defendants' failed to

---

[4] Although the Guidelines counsel against compensating more than one lawyer for attending a meeting, deposition, or hearing, the same rule does not necessarily apply to multiple lawyers attending trial, "depend[ing] upon the complexity of the case and the role that each lawyer is playing." Loc. R. App. Guideline B(2)(c). Here, Plaintiff's counsel billed time for two attorneys to attend trial on both days and for one law clerk to attend trial on the first day. Under ordinary circumstances, a case of this nature may not have required all three personnel, however, public health precautions necessitated by the COVID-19 pandemic presented additional challenges. The trial was not held in a traditional courtroom, but over a videoconferencing platform with parties at separate physical locations. Plaintiff attended the trial from a separate room from his lead Counsel who was presenting argument or examining witnesses. The need for English to Spanish interpretation by remotely participating interpreters further complicated the proceeding. The Court is thus satisfied that the expenses for having additional personnel participate in the trial are warranted.

maintain and produce time and pay records, Plaintiff's attorneys had to subpoena and examine thousands of pages of bank records. Plaintiff's attorneys also expended additional hours on three discovery deficiency letters due to Defendants' failure to timely answer discovery requests. Overall, this Court is satisfied that the above hours Plaintiff's counsel spent litigating the case were reasonable.

The Court must next ascertain the reasonable hourly rate in this case, which looks to the "prevailing market rates in the relevant community for the type of work for which [the party] seeks an award." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). Necessarily, then, this analysis encompasses *Johnson* factors 5 (the customary rate) and 9 (the attorneys' skill and experience). Included in Appendix B to this Court's Local Rules are ranges of presumptively reasonable hourly rates charged by attorneys practicing in this Court. *See* Loc. R. App. Guideline B(3). While "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales v. Caron*, No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). Here, each of the two attorneys billing in this matter seek compensation pursuant to an hourly rate within the applicable Guideline range. Having reviewed each attorney's qualifications and experience, attested to in the affidavit submitted by Mr. Zelikovitz, the Court is satisfied that the hourly rate at which they seek compensation is reasonable in this legal market as outlined below.

| Attorney | Experience | Guideline Range | Requested Rate | Approved Rate |
|---|---|---|---|---|
| Justin Zelikovitz | Approx. 12 years | $225-$350 | $350 | $350 |
| Jonathan Tucker | Approx. 11 years | $225-$350 | $350 | $350 |

Non-attorney support staff hours may also be compensated so long as the work performed is not "purely clerical." *See Jenkins*, 491 U.S. at 288, 288 n.10 (approving separate billing for paralegals in part because "encouraging the use of lower cost paralegals rather than attorneys

wherever possible . . . 'encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes'" (quoting *Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir. 1984))). Plaintiff's requested fees include time billed by four non-attorneys: one paralegal, one law clerk, one administrative assistant, and one receptionist. The Guidelines offer suggested hourly rates only for "paralegals and law clerks." *See* Loc. R. App. Guideline B(3). However, other non-attorney support staff may be compensated for performing similar functions. *See, e.g.*, *Martinez Perez v. Cheng*, No. GJH-18-3348, 2019 WL 7049688, at *6 (D. Md. Dec. 23, 2019) (awarding fees for work done by firm's support staff); *Osorio de Zavala v. Tortilleria El Volcan, LLC*, TDC-17-3093, at *10–11 (D. Md. June 4, 2019) (same). Although described as an "administrative assistant" and a "receptionist" in Mr. Zelikovitz's affidavit, Ms. Gutierrez and Ms. Sanchez billed for time spent on activities supporting the litigation often done by paralegals such as drafting discovery requests, conducting intake interviews, and computing damages calculations. *See Jenkins*, 491 U.S. at 288 n.10 (noting examples of work performed by paralegals such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence"). According to Mr. Zelikovitz's affidavit, at his small firm, these types of tasks are typically handled by Ms. Gutierrez and Ms. Sanchez, both fluent Spanish speakers, in addition to other administrative tasks, and the Court finds they may be compensated for this non-clerical work. However, their skills and qualifications do not warrant the same rate as a paralegal with additional legal training and experience. Therefore, the Court finds a reasonable hourly rate for Ms. Gutierrez and Ms. Sanchez is at the low end of the Guideline range for paralegals and law clerks. After reviewing the qualifications of Mr. Wulff and Ms. Knox in Mr. Zelikovitz's

affidavit, the Court is satisfied that their requested rates, which fall within the guideline range, are reasonable, as shown:

| Non-Attorney | Position | Guideline Range | Requested Rate | Approved Rate |
|---|---|---|---|---|
| Nicolas Wulff | Paralegal | $95-$150 | $150 | $150 |
| Julie Gutierrez | Admin. Assist. | $95-150 | $150 | $95 |
| Norma Sanchez | Receptionist | $95-150 | $150 | $95 |
| Sarah Knox | Law Clerk | $95-150 | $150 | $150 |

Thus, the total initial lodestar amount in this case is $58,836.00, as outlined below:

| Staff Member | Hourly Rate | Recoverable Hours | Initial Lodestar Amount |
|---|---|---|---|
| Justin Zelikovitz | $350 | 86.9 | $30,415.00 |
| Jonathan Tucker | $350 | 42.5 | $14,875.00 |
| Nicolas Wulff | $150 | 17.8 | $2,670.00 |
| Julie Gutierrez | $95 | 4.5 | $427.50 |
| Norma Sanchez | $95 | 5.3 | $503.50 |
| Sarah Knox | $150 | 66.3 | $9,945.00 |
| **Total** | | **223.3** | **$58,836.00** |

Continuing with the lodestar analysis, the Court considers *Johnson* factors 6, 7, 10, and 11: whether the fee is fixed or contingent; the time limitations that the representation placed on the attorneys; the undesirability of the case; and the nature and length of the professional relationship between the attorney and client.  Plaintiff's attorneys undertook representation in this matter on a contingency basis.  *See* ECF 37-1 at 4 (attesting to the fact that the firm "represented [Plaintiff] on a contingency fee basis, advancing all costs, and with no guarantee of being compensated"). "Cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action."  *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *7 (D. Md. Aug. 20, 2019).  Even though the FLSA mandates an award of attorneys' fees, counsel must still front all litigation costs, despite the risk that their client may not prevail on the merits.  *See id.*  Indeed, the law firm that Plaintiff retained in this matter "is a small law firm," employing only two lawyers.  ECF 37 at 10.  A firm

of this size would therefore incur opportunity costs in litigating a case like this, though Plaintiff's counsel do not seek a commensurate increase in the award. *See id.* Finally, Plaintiff's counsel were involved in the prosecution of the instant claims for the duration of this lawsuit, which lasted over a year. All of these considerations support the conclusion that the initial lodestar amount of $58,836.00 is reasonable.

The final two *Johnson* factors for consideration are factors 8 and 12: the amount involved and the results obtained; and awards in similar cases. Plaintiff's Complaint sought to recover unpaid overtime wages of $11,633.00, and along with liquidated and treble damages amounting to a maximum award of three times the unpaid wages, or $34,900.00. ECF 1 at 7. However, some of Plaintiff's claims were barred by the statute of limitations. ECF 30 at 15–16 (explaining claims that accrued before November, 2016 are time-barred). Before trial, Plaintiff adjusted his damages calculations to $10,458.07 in unpaid wages and twice that amount in liquidated and treble damages. ECF 18-1 at 3. After trial, the Court found plaintiff was able to recover $9,403.22 in lost wages, or approximately 80% of the initial amount requested in the complaint and 90% of the adjusted amount. ECF 30 at 20. The Court found there was insufficient evidence to warrant an award of treble damages, and therefore awarded Plaintiff twice the amount of unpaid wages as liquidated damages. *Id.* Nonetheless, after considering a number of FLSA verdicts in this district, the Court is satisfied that an initial lodestar amount of $58,836.00, even in the face of a $18,806.44 verdict, is reasonable. *See, e.g.*, *Matias Guerra*, 2019 WL 3927323 at *8 (finding a claim where plaintiff's damages represented "a little less than one-third" of the attorneys' fees sought was "proportionally similar to attorneys' fees awarded in similar cases"); *Almendarez*, 2010 WL 3385362, at *1, *8 (awarding $84,058.00 in attorneys' fees after only three of eight plaintiffs prevailed after a jury trial, with each receiving $3,200.00, $1,200.00, and $2,200.00, respectively,

including liquidated damages); *Chapman*, 2011 WL 2651867, at *13, *18 (awarding $37,292.52 in attorneys' fees for two of the twelve plaintiffs who accepted a Rule 68 Offer of Judgment, and recovered $2,500.00 and $600.00, respectively).

### 2.     Subtracting Fees Incurred in Pursuit of Unsuccessful Claims

Next, this Court "must 'subtract fees for hours spent on unsuccessful claims.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244); *see also Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019). Where an unsuccessful claim is "distinct in all respects from the successful claims," then a court must eliminate all fees incurred in pursuit of that unsuccessful claim. *Hensley*, 461 U.S. at 440. In many cases, however, a plaintiff's claims may involve "a common core of facts" or be based on "related legal theories." *Randolph*, 780 F. App'x at 16. Such cases make it difficult "to divide the hours expended on a claim-by-claim basis," for "[m]uch of counsel's time will be devoted generally to the litigation as a whole." *Id.* (alteration in original) (quoting *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998)). In these difficult cases, "[w]here hours benefited both successful and unsuccessful claims, 'the court will grant those hours "reasonably expended" on the [successful] claim and exclude those that exceed a "reasonable expend[iture]" on the prevailing claims.'" *Sakala v. Milunga*, No. PWG-16-0790, 2018 WL 5724010, at *9 (D. Md. Oct. 31, 2018) (alterations in original) (quoting *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 642 (D. Md. 2012)).

Here, Plaintiff was successful on all three counts of his Complaint alleged against 9400 Snowden River, LLC, and Haluk Kantar. He initially also brought the same claims against 316 Charles, LLC. However, at trial, the Court determined it was not a proper defendant and granted judgment on all counts in its favor. Therefore, the Court will subtract the $70.00 cost of serving 316 Charles, LCC, from the total costs. The claims against 316 Charles, LLC, were based on the

same facts as claims against the other defendants. *See generally* ECF 1. Additionally, Haluk Kantar, who the Court found liable, is the member and creator of 316 Charles, LLC. Therefore, some investigation into these two named defendants overlapped. Still, the Court finds a deduction of a portion of the time spent on various discovery and case development tasks is warranted. *E.g.*, ECF 37-3 at 2 (billing 2.4 hours for "[b]ackground research on all defendants to determine their address for service and associated business"); *id.* at 3 (billing 1.8 hours to "[d]raft initial discovery requests to all defendants"); *id.* at 5 (billing 2.5 hours to "[r]esearch Defendants' land records and create a summary of the land records"). This results in a deduction of .2 hours from Mr. Tucker's billed time, 1.3 hours from Mr. Wulff's billed time, .8 hours from Ms. Gutierrez's billed time, and .6 hours from Ms. Sanchez's billed time. The amended lodestar amount is $3,627.45 for costs and $58,453.00 for attorneys' fees as shown below:

| **Staff Member** | **Hourly Rate** | **Recoverable Hours** | **Amended Lodestar Amount** |
|---|---|---|---|
| Justin Zelikovitz | $350 | 86.9 | $30,415.00 |
| Jonathan Tucker | $350 | 42.3 | $14,805.00 |
| Nicolas Wulff | $150 | 16.6 | $2,490.00 |
| Julie Gutierrez | $95 | 3.7 | $352.00 |
| Norma Sanchez | $95 | 4.7 | $447.00 |
| Sarah Knox | $150 | 66.3 | $9,945.00 |
| **Total** | | **220.4** | **$58,453.00** |

### 3. Reduction Based Upon the Plaintiff's Degree of Success

The last part of the three-part *McAfee* framework requires the Court to "award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 255). "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). While quantifying success is "challenging," courts nonetheless "*must* compare the amount of damages

sought to the amount awarded." *Randolph*, 780 F. App'x at 23 (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005)).

Defendants' primary opposition to Plaintiff's request for attorneys' fees is that the amount requested is "over three times the actual plaintiff award [and] is abuse of the attorney fee provision under the Fair Labor Standards Act." ECF 41 at 1–2 (suggesting the fee should be closer to 15% or 33.3% of the damages awarded to Plaintiff). However, a review of the case law reveals this contention is not necessarily true. In civil rights cases like this, the Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages" actually recovered. *Matias Guerra*, 2019 WL 3927323, at *9 (alterations in original) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)); *see also, e.g.*, *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454 (2008) (referring to, *inter alia*, the FLSA as a "civil rights statute[]"). Like other civil rights actions, FLSA actions often involve "vulnerable plaintiffs" who "may be vindicating important rights that entitle them to relatively modest compensation," *Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015), and a rule requiring proportionality "would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system." *Salinas v. Comm. Interiors, Inc.*, No. 8:12-cv-1973-PWG, 2018 WL 2752553, at *3 (D. Md. June 8, 2018) (quoting *Rivera*, 477 U.S. at 576). Indeed, the Fourth Circuit has recognized that "[a]wards of attorney[s'] fees substantially exceeding damages are not unusual in civil rights litigation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006); *e.g.*, *Mercer*, 401 F.3d at 211–12 (affirming award of $349,244.00 in attorneys' fees in Title IX suit resulting in nominal damages); *Wadsworth v. Clindon*, 846 F.2d 265, 266–67 (4th Cir. 1988) (affirming award of $13,317.00 in attorneys' fees in Fair Housing Act suit resulting in $1,000.00 in damages); *Matias*

14

*Guerra*, 2019 WL 3927323 (awarding $138,037.78 in attorneys' fees in FLSA case where plaintiff won "a little less than one-third the amount" in damages and providing multiple examples of "proportionally similar" awards in similar cases in the District of Maryland). However, this Court must also ensure that a fee award does not "produce a windfall to attorneys." *Butler v. DirectSAT USA, LLC*, No. DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016).

In FLSA cases, the Fourth Circuit has upheld reductions to, or has itself reduced, lodestar amounts because of the disparity between the damages sought in the plaintiff's complaint, and the success that the plaintiff actually realized. For instance, in *Jackson v. Estelle's Place, LLC*, the Fourth Circuit found that the trial court acted "plainly" within its discretion in reducing, by 25%, the lodestar amount in an FLSA case that settled in the early stages of litigation. 391 F. App'x at 240-41, 243–44 (noting plaintiffs abandoned nine of the original thirteen claims asserted in their complaint). In *Randolph v. PowerComm Construction, Inc.*, the Fourth Circuit found the trial court abused its discretion by *failing* to reduce the lodestar amount where ten original plaintiffs were dismissed and the remaining plaintiffs settled for only $100,000.00 of the $1.7 million in damages originally sought. 780 F. App'x at 18–19, 22–25 (calculating that plaintiffs "received only 38% of their claimed unpaid overtime wages," or "only 6% of the damages sought at the outset of litigation" and instructing the trial court to reduce the attorneys' fee award by 25%).

Courts in this District have also reduced lodestar amounts in FLSA cases for similar reasons. *See, e.g.*, *Matias Guerra*, 2019 WL 3927323, at *10 (reducing the lodestar by only 5% because the plaintiff, despite a "staunch opposition," prevailed on all of his wage and hour claims except one, but failed to demonstrate an entitlement to treble damages); *Sakala*, 2018 WL 5724010, at *11–12 (reducing the $91,804.17 lodestar amount by 20%, because the amount that the plaintiff recovered was "less than half" of what she originally sought in her wage and hour

15

claims, and a "small fraction" of what she sought for an unrelated claim that she withdrew two weeks prior to trial); *Chapman*, 2011 WL 2651867, at *17–18 (reducing the lodestar by 25% because the two settling plaintiffs each sought $5,291.91 in damages under the FLSA, but recovered "less than fifty percent and fifteen percent, respectively," resulting in a fee award of $37,292.52).

Considering these decisions in light of the facts presented here, this Court believes that only a modest further reduction of the lodestar amount is warranted. Plaintiff's claims were not weak claims that settled early. After an unsuccessful mediation attempt and a two-day bench trial, Plaintiff prevailed on all three claims and was awarded over 80% of (or just $2,230.11 less than) the unpaid wages originally sought in his complaint. However, Plaintiff was not successful in seeking an award of treble damages, making his overall recovery 54% of the amount originally sought. Still, Plaintiff's counsel have taken reasonable measures to control costs. They did not bill time in this case for taking depositions but relied on depositions taken a separate case involving Defendants, and did not bill for every client phone call or interoffice discussion of the case. Accordingly, the Court will reduce the lodestar amount by only 5% to account for the degree of success. The final attorneys' fee award amounts to $55,530.35, and the final costs award is $3,627.45.

**IV.   CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Attorneys' Fees and Costs, ECF 37, is GRANTED. Plaintiff will be awarded $59,157.80 in attorneys' fees and costs. A separate order follows.

Dated:  February 19, 2021                                                  /s/
                                                                  Stephanie A. Gallagher
                                                                  United States District Judge